1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable. James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAMIE KAHLO and DANIEL KAHLO, on
behalf of themselves and all others similarly
situated,

                                Plaintiffs,

v.

BANK OF AMERICA, N.A. and BAC
HOME LOANS SERVICING, L.P.

                               Defendants.

NO.  2:10-cv-00488 JLR

**DEFENDANTS' MOTION TO
DISMISS AND SUPPORTING
MEMORANDUM**

**NOTE ON MOTION CALENDAR:
FRIDAY, JUNE 25, 2010**

**ORAL ARGUMENT REQUESTED**

## <u>MOTION</u>

      COME NOW defendants Bank of America, N.A. ("BANA") and BAC Home Loans

Servicing, LP ("BAC") (collectively, "Defendants"), by and through undersigned counsel,

and move this Court for an Order dismissing all claims of plaintiffs Kamie and Daniel Kahlo

("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Motion is supported

by the Memorandum in Support of Motion to Dismiss set forth below; the files and pleadings

in this matter; applicable case law, including the authorities referenced in the Memorandum;

all exhibits; matters of which the Court may take judicial notice; and/or such other arguments,

evidence and authorities as may be submitted or allowed prior to or at the hearing of this

matter.  A proposed Order dismissing this case also accompanies this Motion.

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 1
CASE NO.  2:10-cv-00488 JLR

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION/RELIEF REQUESTED

Plaintiffs Kamie and Daniel Kahlo are homeowners who recently became unable to afford the mortgage loan they took in 2001.  There are no allegations that the loan terms were unfair, or that the Kahlos did not understand the terms of the loan, or that there was anything wrong with the loan itself.  Instead, because of changes in their personal circumstances, the Kahlos found themselves having difficulty making their monthly mortgage loan payments.  When this occurred, Plaintiffs turned to their mortgage loan servicer – Defendant BAC – for assistance.  Although it had no legal obligation to do so, BAC has cut Plaintiffs' monthly loan payments nearly in half – from $1,460.00 per month to a mere $781.79.  And, thanks to BAC's assistance, Plaintiffs are still living in their home, have not been foreclosed upon, and have no reason to fear foreclosure.

According to Plaintiffs, though, BAC has not done enough.  Although Plaintiffs signed a Terms and Conditions Agreement ("TCA") that would substantially reduce both their interest rate and the amount of their monthly payments, Plaintiffs complain that they have not yet received "final" modification documents.  Without such final documents, Plaintiffs contend, they are "living in limbo."  Plaintiffs have now filed suit based upon the absence of final modification documents, together with an assertion that Defendants required Plaintiffs to make a full monthly payment before agreeing to consider them for a modification.

None of the allegations contained in Plaintiffs' Complaint entitle them to recover on their common-law claims for breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, and unjust enrichment, or on their claim under the Washington Consumer Protection Act, RCW § 19.86.010, *et seq.*  Plaintiffs' claims for relief under these theories rest on premises that are legally deficient and factually insufficient to state a claim.

First, Plaintiffs' breach of contract and breach of duty claims depend largely upon the theory that Plaintiffs are intended third-party beneficiaries of a Servicer Participation

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 2
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

Agreement between BANA and the U.S. Treasury Department.  As a matter of Ninth Circuit law, borrowers such as Plaintiffs are not third-party beneficiaries of the Servicer Participation Agreement.  *See, e.g.*, *Escobedo v. Countrywide Home Loans, Inc.*, No. 09-cv-1557, 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009); *Villa v. Wells Fargo Bank, N.A.*, No. 10-cv-81, 2010 WL 935680, *2-3 (S.D. Cal. March 15, 2010).  Even if the Servicer Participation Agreement permitted third parties to recover, Plaintiffs are not entitled to relief because their modification was not covered by the Home Affordable Modification Program ("HAMP") – the subject of the agreement between BANA and the U.S. Treasury Department.  Plaintiffs' modification has nothing to do with HAMP.

Second, Plaintiffs alternatively seek to premise their claims on Defendants' alleged breach of a Terms and Conditions Agreement that Plaintiffs signed.  But that premise fails because even if the agreement was enforceable against Defendants (which it is not), the Complaint fails to allege a single obligation under the agreement that was breached.  And, even if there were a breach, Plaintiffs have suffered no economic loss as a result – they are still living in their house and to the extent they have made any payments at all, they have made only the reduced payments set forth in the Terms and Conditions Agreement.  For essentially these same reasons, Plaintiffs' other claims must also fail.  With no support for any of the claims stated, the Complaint must be dismissed in its entirety.

## **FACTUAL ALLEGATIONS**[1]

### A. *Plaintiffs' Application for a Loan Modification*

Plaintiffs purchased their home in 1999, and refinanced in 2001.  Complaint, ¶ 51.  Although not mentioned in the Complaint, Plaintiffs entered into a previous loan modification

---

[1] The recitation of the factual allegations herein is taken from Plaintiffs' Complaint and is intended only to aid in the Court's resolution of this Motion to Dismiss.  *See Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010) (when evaluating motion to dismiss, court accepts the allegations set forth in the complaint as true).  By including these allegations in this memorandum, Defendants do not intend to admit them and reserve their right to challenge them at a later date should the need arise.

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 3
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1    agreement with Bank of America in 2003, which resulted in a reduced monthly principal and

2    interest payment of $1,460, the amount the Complaint alleges was required under their

3    original loan agreement.   Complaint, ¶ 51.   Due to a decrease in their income in 2008,

4    Plaintiffs approached one of the Defendants[2] to inquire about another possible "workout

5    arrangement."  *Id.* ¶ 52.  After defaulting on their payments, in early 2009 Plaintiffs began the

6    process of seeking a loan modification.  *Id.* ¶¶ 53-54.   On July 28, 2009, Plaintiffs faxed one

7    of the Defendants documentation requesting a modification, including a signed hardship

8    affidavit, "bank statements, tax returns, and statements showing their property tax account and

9    homeowner's insurance property."  *Id.* ¶ 56.   Before considering Plaintiffs' modification

10   request, that Defendant allegedly asked Plaintiffs to make one full monthly loan payment,

11   which Plaintiffs did on August 11, 2009.  *Id.* ¶¶ 56-57.

12          The Complaint then alleges that on August 20, 2009, a representative of one of the

13   Defendants contacted Plaintiffs to let them know that they had been approved for a loan

14   modification.  *Id.* ¶ 58.   That representative also requested that Plaintiffs pay the $289.12 in

15   late fees that had accrued on the loan.  *Id.*   Shortly thereafter, Plaintiffs received a Terms and

16   Conditions Agreement ("TCA") that summarized the terms and conditions of the modification

17   offer.  *Id.* ¶ 59; *see* Complaint, Exh. 9.   Assuming all conditions were satisfied and a final

18   loan modification was entered, effective November 1, 2009, Plaintiffs' modified interest rate

19   would be 3.25%, and their modified principal and interest payments would be $781.79,

20   adjusting in five years.  Complaint, ¶ 60; Complaint, Exh. 9 at 2-3.   The maturity date of

21   Plaintiffs' loan would be extended to October 1, 2049, but all other terms and conditions of

22   the original mortgage were to "remain the same for the Modified Mortgage."  *Id.*

23
24   _____

[2]        In their Complaint, Plaintiffs refer to BANA and BAC collectively as "Bank of America."  *See* Complaint, ¶¶ 11, 17.  It is therefore unclear which of Defendants – BANA or BAC, or both – supposedly undertook the acts alleged in the Complaint.  Defendants believe that the only proper Defendant to this lawsuit is BAC, as BANA had no involvement in the servicing of Plaintiffs' loan.  Because, however, the Complaint fails to state a cause of action against either Defendant, Defendants reserve for another day any argument as to the propriety of including BANA in the complaint.

25

26

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 4
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

The cover letter accompanying the TCA explained that Plaintiffs could accept the terms and conditions outlined therein by signing and returning the letter. Complaint, ¶ 59; Ex. 9 at 1. Plaintiffs acknowledged their acceptance of the TCA by signing and returning it. Complaint, ¶ 61. A representative of one of the Defendants then allegedly sent Plaintiffs an e-mail confirming receipt of their payment, and telling Plaintiffs that they "would receive 'final' modification documents at the time their first payment is due." *Id.* Plaintiffs made their first payment of $781.79 on October 30, 2009, and allege they have made each subsequent payment. *Id.* ¶¶ 61, 64.[3] Though Plaintiffs have, at most, made payments of no more than $781.79, Plaintiffs complain that they have not yet received "final modification documents." *Id.* ¶¶ 64, 66-67.

**B.      The Home Affordable Modification Program**

Plaintiffs allege that the loan modification they received was provided them under the federal government's Home Affordable Modification Program ("HAMP"). While this allegation is incorrect, and, in fact, the very documentation referenced in Plaintiffs' Complaint establishes that their modification was a non-HAMP modification, *see* Section I.B. *infra*, for purposes of the present motion, a brief description of the HAMP program may be useful.

In early 2009, the U.S. Treasury announced a national modification program intended to help 3 to 4 million at-risk homeowners avoid defaulting on their mortgage loans by reducing monthly payments. Complaint, Exh. 2 at 1 (HAMP Supplemental Directive 09-01). On March 4, 2009, the government published detailed program guidelines for HAMP. *Id.* Under the program guidelines, borrowers who meet certain criteria may be eligible to have their loans modified. *Id.* at 2.

All servicers of loans that are owned or guaranteed by Fannie Mae or Freddie Mac ("GSE loans") must participate in the HAMP program as to those loans. Participation in

---

[3]      This is actually untrue. Plaintiffs have not, in fact, made consistent monthly payments of even the reduced amount. But for purposes of this motion, the Court must accept the truth of this allegation.

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 5
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

HAMP is voluntary for servicers as to non-GSE loans.  Complaint, Exh. 2 at 2.  A servicer that chooses to voluntarily participate in HAMP must execute a Servicer Participation Agreement "with Fannie Mae in its capacity as financial agent for the United States."  *Id.*  On April 17, 2009, Steve R. Bailey of BANA signed a Servicer Participation Agreement with the federal government.  Complaint, ¶¶ 33-34; *see* Complaint, Exh. 1.

Not all mortgage loans are eligible for HAMP, and a participating servicer is not required to modify every HAMP-eligible loan.  If borrower eligibility is satisfied, the servicer is obligated *to consider* the borrower for a HAMP modification, assuming it is not precluded from doing so by its other contractual arrangements or investor requirements.  Complaint, Exh. 2 at 1.  However, the servicer retains considerable discretion when determining eligibility for a permanent modification.  *See, e.g.*, *id.* at 5, 17.  Using the borrower's income information, a participating servicer will follow a series of steps (known as the "waterfall") in an effort to adjust the borrower's monthly mortgage payment to 31% of a borrower's total pre-tax monthly income.  *Id.* at 8-10.  If application of the waterfall produces an affordable payment, the servicer also subjects the loan to a Net Present Value ("NPV") test.  *Id.* at 4-5  If the NPV test produces a "negative" result (meaning that losses from foreclosure are less than losses from modification), the servicer is not obligated to modify the loan.  *Id.*

If the servicer decides to modify the loan, it may then send the borrower an offer of a Trial Period Plan under HAMP.  Complaint, Exh. 2 at 5.  If the borrower returns the agreement, together with the documents necessary to verify his or her income and eligibility for a HAMP modification, the servicer may accept the borrower into a Trial Period Plan.  *Id.*  The servicer retains ample discretion in this regard, and may require the borrower to submit the necessary documentation before offering him or her a Trial Period Plan.  *Id.* at 5-6.  If the borrower fails to submit the necessary documentation, or does not return a signed Trial Period Plan offer, the servicer may consider the offer to have expired after 60 days.  *Id.* at 15.  A borrower may receive a permanent HAMP modification only if he or she submits all the

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 6
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

1   necessary documentation, is determined to be HAMP-eligible (including that all HAMP

2   requirements continue to be met – *e.g.*, income is verified, NPV is positive, and the original

3   mortgage payment exceeds 31% of pre-tax income), and makes timely payments under the

4   Trial Period Plan. *Id.* at 15, 18.

5         When borrowers are not eligible for a HAMP modification for one reason or another,

6   servicers may still offer non-HAMP modifications to borrowers, such as the modification

7   provided to the Kahlos. *See* Complaint, Exh. 2 at 8-9, 15.

8                                    **LEGAL STANDARD**

9         A complaint, or any cause of action alleged therein, must be dismissed when it fails to

10   state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  This standard is met

11   where a complaint fails to allege sufficient facts which, if true, would provide adequate

12   grounds to entitle a plaintiff to relief.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *Bell*

13   *Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).  However, a complaint containing mere

14   "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does

15   not state a claim.  *Id.*  Rather, the "[f]actual allegations must be enough to raise a right to

16   relief above the speculative level, on the assumption that all the allegations in the complaint

17   are true (even if doubtful in fact)." *Id.* (citations and emphasis omitted).  Where the complaint

18   lacks a "cognizable legal theory" or facts that are sufficient to support a cognizable legal

19   theory, it must be dismissed. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.

20   1988).

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 7
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1

## ARGUMENT

2

*I.*    **Plaintiffs Cannot Recover Under BANA's Servicer Participation Agreement with**

3
    **the U.S. Treasury.**

4
    Count I of Plaintiffs' Complaint purports to state claims for breach of contract and

5
breach of the duty of good faith and fair dealing.  As a basis for these claims, Plaintiffs assert

6
that they are among the intended beneficiaries of a Servicer Participation Agreement ("SPA")

7
entered into between BANA and the Treasury (and attached to the Complaint as Exhibit 1),

8
and that Defendants breached their contractual duties under that SPA "by failing to provide

9
eligible borrowers with the opportunity to accept permanent loan modifications and by

10
wrongfully collecting introductory payments."  Complaint, ¶¶ 82-84.  This claim must fail for

11
two independent reasons:  first, individual borrowers are not intended beneficiaries of SPAs;

12
and second, even if they were, Plaintiffs' modification was not a HAMP modification, and

13
therefore they cannot be the intended beneficiaries of the SPA.[4]

14
    **A.**    **Borrowers Are Not Intended Beneficiaries of HAMP Servicer**

15
    **Participation Agreements**.

16
    The notion that borrowers – even HAMP-eligible borrowers – are the intended third-

17
party beneficiaries of SPAs has been soundly rejected as a matter of Ninth Circuit law by

18
other courts in this Circuit.  Like Plaintiffs, the plaintiff in *Escobedo v. Countrywide Home*

19
*Loans, Inc.*, No. 09-cv-1557, 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009), attempted to bring

20
suit against a loan servicer for breach of contract, alleging that he was the intended third-party

21
beneficiary of an SPA between the servicer (Countrywide) and Fannie Mae.  *Id.* at *1-2.  The

22
Court rejected the third-party beneficiary claim.  *Id.* at *2.

23
[4]    One can only surmise that Plaintiffs have pleaded this third-party beneficiary claim (as well as their

24
other claims) in an attempt to circumvent the restrictions on individual borrowers suing under HAMP itself, the
Emergency Economic Stabilization Act ("EESA"), or the Troubled Assets Relief Program ("TARP").  *See, e.g.,*
*Gaitan v. Mortgage Electronic Registration Sys.*, No. EDCV 09-1009 VAP, 2009 WL 3244729, *7 (C.D. Cal.

25
Oct. 5, 2009) (holding that there is no private cause of action under HAMP); *see also Gonzales v. First Franklin*
*Loan Servs.*, No. 1:09-CV-00941, 2010 WL 144862, *18 (E.D. Cal. Jan. 11, 2010) (holding that there is no

26
private right of action under either EESA or TARP).

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 8
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

Like the SPA at issue here, the SPA in *Escobedo* was, pursuant to its terms, "governed by and construed under Federal law." Complaint, Exh. 1, at 10 (§11A); *see Escobedo*, 2009 WL 4981618, at *2 (quoting § 11A of that SPA). Turning, therefore, to Ninth Circuit law regarding third-party beneficiaries, the court noted that "[t]o sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Id.* (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 2000)). And, as is particularly relevant here, "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary. Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *Id.* (quoting *Klamath*, 204 F.3d at 1210-11) (internal quotation marks and citations omitted).

While the *Escobedo* court recognized that the SPA "was entered into in part for the benefit of qualified borrowers and with these borrowers in mind," it could find no indication in the language of the SPA indicating "that the parties intended to grant qualified borrowers the right to enforce the [SPA]." *Id.* In fact, the court noted, the SPA contained language specifying that it "shall inure to the benefit of *the parties to the Agreement and their permitted successors-in-interest*." *Id.* (quoting § 11E of that SPA) (emphasis in original). Nearly identical language appears in the SPA that Plaintiffs rely upon in this case. *See* Complaint, Exh. 1 at 10 (§ 11E). In fact, even stronger support for the conclusion that borrowers have no right to enforce the SPA is found in the present case, as BANA's SPA specifically recognizes that disputes may arise under the contract and provides a mechanism for their resolution – but by "Fannie Mae and Servicer" (*i.e.*, BANA) only. *Id.* at 7 (§ 7). Further, the SPA only permits legal action to be taken after the parties have taken "all reasonable steps to resolve disputes internally." *Id.* This section omits any reference to third parties enforcing the SPA's terms, and with good reason: to permit third parties to file suit to enforce the SPA's terms

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 9
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1    would undermine the section's stated goal of "resolv[ing] disputes internally" before legal

2    proceedings become necessary.

3    Based upon the clear import of these contractual provisions, the court in *Escobedo*

4    found that:

> A qualified borrower would not be reasonable in relying on the Agreement as
> manifesting an intention to confer a right on him or her because the Agreement
> does not *require* that Countrywide modify eligible loans.  The Agreement sets
> forth Home Affordable Modification Program *Guidelines*.  The Guidelines set
> forth eligibility requirements and states *[sic]*:  "Participating servicers are
> required to *consider* all eligible loans under the program guidelines unless
> prohibited by the rules of the applicable PSA and/or other investor servicing
> agreements."  The Agreement does not state that Countrywide must modify all
> mortgages that meet the eligibility requirements.

10   *Escobedo*, 2009 WL 498161 at *3 (citations omitted).  Accordingly, the court concluded that

11   "[q]ualified borrowers are incidental beneficiaries of the Agreement and do not have

12   enforceable rights under the contract" and dismissed the plaintiff's breach of contract claim.

13   *Id.*

14   The court in *Villa v. Wells Fargo Bank, N.A.*, No. 10-cv-81, 2010 WL 935680, *2-3

15   (S.D. Cal. March 15, 2010), adopting *Escobedo*'s reasoning, also concluded that the plaintiff

16   borrowers were not intended beneficiaries of a HAMP Servicer Participation Agreement, and

17   therefore dismissed the complaint.  In so concluding, the court found further support in the

18   staggering number of borrowers who would be third party beneficiaries entitled to relief under

19   the plaintiffs' theory:

> It is notable that the HAMP legislation was enacted with the hopes of helping 3
> to 4 million homeowners avoid foreclosure.  While numbers alone are not
> determinative of intended beneficiary status, the breadth and indefiniteness of a
> class of beneficiaries is entitled to some weight in negating the inference of
> intended beneficiary status.

23   *Id.* at *3 n.1 (citations and internal quotation marks omitted).  As the *Villa* and *Escobedo*

24   courts concluded, and for the same reasons that those courts found persuasive, borrowers are

25   at best indirect beneficiaries of SPAs entered into under HAMP, and as such are not entitled

26   to assert claims as intended third-party beneficiaries of those contracts.  Accordingly,

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 10
CASE NO.  2:10-cv-00488 JLR

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1    Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing,

2    to the extent that they rely upon this theory, must be dismissed with prejudice.[5]

3            **B.        Plaintiffs' Modification Was a Non-HAMP Modification.**

4            Much of Plaintiffs' Complaint rests on the assertion that they applied for and received

5    a Trial Period Plan ("TPP") modification under HAMP, and that defendants failed to provide

6    them a "final" HAMP modification.  *See, e.g.*, Complaint, ¶¶ 89, 92, 95, 98, 102, 105.  In fact,

7    the entire factual background section of Plaintiffs' Complaint (Section IV) is devoted to an

8    explanation of HAMP, the duties of a participating servicer under HAMP, and Plaintiffs'

9    efforts to obtain a loan modification under HAMP.   What Plaintiffs fail to recognize,

10   however, is that they did not receive a TPP modification at all, but rather received an entirely

11   different type of loan modification that is unassociated with HAMP.   Thus, even if the SPA

12   could create an independent cause of action for borrowers who received a trial HAMP

13   modification, Plaintiffs are not among such borrowers.

14           Plaintiffs attach as Exhibit 9 to their Complaint a copy of the TCA for the loan

15   modification offered to them, and allege that this TCA is a TPP agreement under HAMP.

16   Complaint, ¶¶ 56-59; Exh. 9.  In their Complaint, however, Plaintiffs describe the "standard

17   form agreement" used "to offer TPPs to eligible homeowners."  Complaint, ¶ 41.  The HAMP

18   agreement that Plaintiffs describe ("TPP Agreement") is attached as Exhibit A to the

19   Declaration of John Devlin in support of this motion.[6]  Even a cursory comparison of the TCA

---

20
21   [5]        Defendants recognize that another court has concluded that private individuals may have a third-party
     beneficiary claim for breach of contract under a SPA.  *See Reyes v. Saxon Mortgage Services, Inc.*, No. 09-cv-
22   1366, 2009 WL 3738177, *1-2 (S.D. Cal. Nov. 5, 2009).  Defendants respectfully submit, however, that the
     rudimentary analysis in that case, which examined neither the language of the SPA at issue nor Ninth Circuit law
23   regarding third-party beneficiary claims, holds little persuasive value when compared to the more thorough, and
     subsequent, analyses in *Escobedo* and *Villa.*
24   [6]        Documents referenced in a complaint can be considered in ruling on a motion to dismiss without
     converting the motion to a motion for summary judgment.  *See Branch v. Tunnell*, 14 F.3d 449, 453-454 (9th
25   Cir. 1994) ("We hold that documents whose contents are alleged in a complaint and whose authenticity no party
     questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)
26   motion to dismiss. Such consideration does 'not convert the motion to dismiss into a motion for summary
     judgment.'") (internal citations omitted) (overruled on other grounds); *see also Van Buskirk v. Cable News*
     (continued . . .)

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 11
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1  signed by Plaintiffs and the TPP Agreement clearly shows that Plaintiffs received a non-

2  HAMP modification.

3       The TPP Agreement is titled – as may be expected – "Home Affordable Modification

4  Trial Period Plan."  TPP Agreement at 1.  By contrast, the TCA is titled "Terms and

5  Conditions Agreement."  Complaint, Exh. 9 at 2.  The TPP Agreement includes each of the

6  terms that may be expected to be included in a HAMP Trial Period Plan offer:  a section on

7  the effective date of the trial period plan and a description of the trial period plan, including

8  the breakdown of the monthly payments the borrower owes during the TPP.  TPP Agreement

9  at 2.  This information is not included in Plaintiffs' TCA, which makes no reference to trial

10  period payments.  *See generally* Complaint, Exh. 9.  Consistent with the HAMP guidelines,

11  the TPP Agreement explains that if the homeowner complies with its terms and meets certain

12  conditions, the borrower may receive a permanent HAMP Modification Agreement.  TPP

13  Agreement at 1.  This section is, once again, not included in the TCA.  Complaint, Exh. 9 at 2.

14       As Plaintiffs recognize in their Complaint, a TPP Agreement, and HAMP itself,

15  requires certain conditions to be met before a permanent HAMP modification will be

16  granted.[7]  Complaint, ¶ 41.  This is borne out in the TPP Agreement attached to this motion,

17  in which the permanent modification is referenced prior to Section 1, as well as in Section 3,

18  which explain certain of the conditions required for a permanent HAMP modification.  TPP

19  Agreement at 1, 3.  In contrast, there is no term or condition in the TCA that references a

20  permanent modification (whether under HAMP or otherwise).  Rather, the TCA lays out the

21  terms of the modification, the new principal balance, and the new interest rates, *see*

22  Complaint, Exh. 9, information that is not and would not be included in a TPP Agreement – it

23

24       (. . . continued)

25  *Network, Inc.* 284 F.3d 977, 980 (9th Cir. 2002) ("Under the 'incorporation by reference' rule of this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.").

26  [7]    *See supra* at pp. 6-7.

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 12
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

is instead information that would only be appropriate in a permanent HAMP modification, after a borrower's eligibility for a permanent modification had been conclusively determined.

It is clear on the face of these documents that the TCA is not a TPP modification under HAMP, but is instead an entirely different type of loan modification.  Because Plaintiffs did not receive a TPP modification, they are not entitled to any relief under the HAMP program or the SPA, even if such relief were theoretically possible.

## II.   *Plaintiffs Have Not Stated a Claim for Breach of Contract Based Upon the Terms and Conditions Agreement.*

As an alternative to the faulty third-party beneficiary theory they advance in support of Count I, Plaintiffs also assert a breach of contract claim based upon the TCA they signed on August 30, 2009, attached to the Complaint as Exhibit 9.   Plaintiffs fare no better under this theory.  A plaintiff asserting a breach of contract claim must show the following elements: "(1) a contract that imposed a duty, (2) breach of that duty, and (3) an economic loss as a result of that breach."  *Myers v. State*, 152 Wash. App. 823, 827-28 (2009) (citation omitted). Plaintiffs cannot, as a matter of law, establish any of these elements.

To begin, Defendants note that the TCA is not enforceable against Defendants.  The clear terms of the modification letter required Plaintiffs to sign and return it "within seven days from the date of this letter," and although the letter was dated August 21, 2009, Plaintiffs did not sign it until August 30, 2009.  Complaint, Exh. 9 at 1, 4; *see* Complaint, ¶ 59.  "It is well settled that an offeror may require acceptance within a specified reasonable time and that failure of the offeree to so accept constitutes a rejection of the offer."  *Corcoran v. Lyle School Dist. No. 406, Klickitat County*, 20 Wash. App. 621, 624 (1978).  Plaintiffs failed to accept the offer in the manner specified, and therefore no enforceable contract was formed.

Even assuming that the TCA is enforceable against Defendants, Plaintiffs are not entitled to recovery because no term of the TCA has been breached, nor have they suffered any economic harm as a result of the alleged breach.

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 13
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

1

**A.        There Has Been No Breach of the Terms and Conditions Agreement.**

2

    While Plaintiffs contend that Defendants breached the TCA by "failing to offer

3 Plaintiffs permanent HAMP modifications, and by collecting upfront fees," Complaint, ¶ 92,

4 *no term of the TCA* imposes any such duties on Defendants.  It is wholly silent as to whether

5 (or when) Defendants are affirmatively required to make the modification offer contained

6 therein permanent; nor does it prohibit Defendants from requiring that borrowers who request

7 loan modifications demonstrate their good faith by making a full monthly payment before

8 they will be considered for a modification.

9

    Plaintiffs cannot premise their claim for breach of contract on the breach of duties and

10 terms that are not contained in the TCA itself.  Because Plaintiffs have failed to identify a

11 duty imposed by the TCA that Defendants breached, this claim must be dismissed.

12

**B.        Plaintiffs Have Suffered No Economic Loss.**

13

    Even if the TCA constitutes an enforceable contract, and even if Defendants breached

14 one or more of its terms, the Complaint identifies no economic harm to Plaintiffs as a result of

15 such breach.  Plaintiffs contend that since October 2009, as a result of the modification

16 offered them, they have only been making mortgage payments of $781.79 per month – nearly

17 half of the $1460.00 they would otherwise have been obligated to make under the terms of

18 their loan.  They are still living in their house and have not been foreclosed upon.  In light of

19 this, Plaintiffs' contention that they are among "hundreds of Washington homeowners" who

20 "are wrongfully being deprived of an opportunity to cure their delinquencies, pay their

21 mortgage loans and save their homes," Complaint, ¶ 10, rings particularly hollow.  Plaintiffs

22 have been given the opportunity to do, and are doing, exactly those things.

23

    Plaintiffs' other allegations of harm suffered as a result of the supposed breach are

24 equally without merit.  The assertion that Plaintiffs have no "assurances that their home will

25 not be foreclosed," *id.* ¶ 68, is simply false: the TCA itself provides that as long as Plaintiffs

26 "perform as required," Bank of America "will cease any collection activity."  Complaint, Exh.

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 14
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

9, at 1.  And Plaintiffs' averment that the alleged breach has caused them to "forego other remedies that might be pursued to save their homes *[sic]*, such as restructuring their debt under the bankruptcy code, or pursuing other strategies to deal with their default, such as selling their home," Complaint, ¶ 95, is false on its face.  Nothing currently prevents Plaintiffs from declaring bankruptcy or putting their house on the market.  They could have done so yesterday, they could still do so today, and they will be able to do so tomorrow.

Any other "remedies" or "strategies" that Plaintiffs may have foregone as a result of the alleged breach here are not pleaded with enough particularity to satisfy the requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007), that the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level."  The Complaint identifies no economic loss as a result of Defendants' alleged breach of the TCA, and Plaintiffs' breach of contract claim must be dismissed.

### III.  Plaintiffs' Claim for Breach of the Duty of Good Faith and Fair Dealing Must Fail for the Same Reasons Their Breach of Contract Claim Fails.

Plaintiffs cannot recover for breach of the duty of good faith and fair dealing.  A critical hurdle any plaintiff must clear in order to state a claim for breach of this duty is to establish the existence and "performance of a specific contract term" and breach in relation to that term.  *Keystone Land & Development Co. v. Xerox Corp.*, 152 Wash. 2d 171, 177 (2004).  As set forth above, there is no actual provision of the TCA that Defendants are alleged to have breached.  *See* Section II *supra*.  This alone bars any entitlement to relief under a good faith and fair dealing theory.

In addition, in order to establish a claim for breach of the duty of good faith and fair dealing, Plaintiffs must establish that Defendants did not perform the obligations of the contract that do exist in good faith.  *Carlile v. Harbour Homes, Inc.*, 147 Wash. App. 193, 215-16 (2008).  Courts look to the specific terms of the parties' contract for guidance as to whether those obligations were performed in good faith.  *Id.*  Without any indication that a

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 15
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1   defendant's behavior was inconsistent with the terms of the contract, a claim for breach of the

2   covenant of good faith and fair dealing cannot succeed.  *Id*; *see also Grinolds v. Farmers Ins.*

3   *Co. of Washington*, No. 39182-8-I, 1997 WL 781425, *4 (Wash. App. Dec. 18, 1997) (no

4   breach of duty of good faith and fair dealing where "none of the actions [Plaintiff] complained

5   about related to terms of the contract").  Plaintiffs have not pleaded that Defendants acted in a

6   way that is inconsistent with the terms of the TCA.  As noted, nothing in the TCA compels

7   Defendants to make the modification offered permanent, and nothing in it prohibits

8   Defendants from requiring that Plaintiffs make a single monthly payment prior to modifying

9   their loan.  The duty of good faith and fair dealing does not impose additional terms that the

10  parties did not themselves negotiate and agree to include in their contract.  *See Carlile*, 147

11  Wash. App. at 216 ("[T]he duty of good faith does not inject substantive terms into the

12  parties' contract." (internal quotation marks and footnotes omitted)); *see also Myers v. State*,

13  152 Wash. App. 823, 828 (2009) ("[C]ovenants of good faith and fair dealing do not trump

14  express terms or unambiguous rights in a contract.").

15          Finally, Plaintiffs are unable to establish the requisite damages necessary to recover

16  for breach of the duty of good faith and fair dealing.  Plaintiffs are still making their

17  (substantially reduced) monthly payments.  They are still living in their home, have not been

18  foreclosed upon and are not in the process of being foreclosed upon.  Nothing is preventing

19  them from pursuing other "remedies" or "strategies" to cope with their reduced income.

20  **IV.     *Plaintiffs' Claim for Promissory Estoppel Must Fail for the Same Reasons as Their Contract Claims.***

21          Plaintiffs' alternative theory of relief for recovering under the TCA – promissory

22  estoppel – fares no better than their claims for breach of contract and breach of the duty of

23  good faith and fair dealing.  "Promissory estoppel requires, '(1) A promise which (2) the

24  promisor should reasonably expect to cause the promisee to change his position and (3) which

25  does cause the promisee to change his position (4) justifiably relying upon the promise, in

26

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 16
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

such a manner that (5) injustice can be avoided only by enforcement of the promise.'"  *Corey v. Pierce County*, 154 Wash. App. 752, 768 (Wash. App. 2010) (quoting *Corbit v. J.I. Case Co.*, 70 Wash. 2d 522, 539, 424 P.2d 290 (1967)).   An essential element of any claim for promissory estoppel is a "clear and definite promise."  *Musson Transport, Inc. v. Costco Wholesale Corp.*, No. 19406-6-II, 1997 WL 404061, *2 (Wash. App. July 18, 1997) (citing *Havens v. C & D Plastics, Inc.*, 124 Wash. 2d 158, 173 (1994)).   A plaintiff's reliance cannot "counterbalance the absence of the required promise."  *Id.* (quoting *Havens*, 124 Wash. 2d at 173) (internal quotation marks omitted).

Here, Plaintiffs allege that Defendants, by way of the TCA, promised Plaintiffs that they would receive a permanent modification if they returned a signed version of the TCA and made their payments.  Complaint, ¶ 98.  However, there is again no term in the TCA that provides that Defendants must make the modification offer contained therein permanent; or that if Plaintiffs comply with a certain set of terms the modification will become permanent.  *See* Complaint, Exh. 9 at 1.  Plaintiffs have hardly alleged the "clear and definite" promise that they must establish in order to recover.

Nor can Plaintiffs establish that their reliance on Defendants' alleged promise caused them to change their position in such a way that "injustice can be avoided only by enforcement of the promise."  The sole harm Plaintiffs allege as a result of their reliance on the supposed promise is that they "have lost the opportunity to fund other strategies to deal with their default and avoid foreclosure."  Complaint, ¶ 102.  To the contrary, Plaintiffs have, as a result of the modification in the TCA, been making payments in an amount that is nearly half what they were otherwise obligated to pay under the terms of their original mortgage contract.  As a result of their reduced mortgage debt, Plaintiffs have freed up nearly another seven hundred dollars per month to "fund other strategies" – whatever those strategies may be.  If Plaintiffs are again referring to the possibility that they could have or would have filed for bankruptcy or sold their home, this is, as discussed above, a red herring, because Plaintiffs

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 17
CASE NO.  2:10-cv-00488 JLR

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

are still fully capable of doing either of those things if they wish.  Because Plaintiffs have identified neither a clear and unambiguous promise, nor a detrimental change in their position as a result of any promise, their promissory estoppel claim must be dismissed.

## V.  *Defendants Were Not Unjustly Enriched by Collecting a Monthly Payment Prior to Considering Plaintiffs for a Modification.*

Plaintiffs' assertion that Defendants were unjustly enriched is groundless.  First, there was nothing unjust or inequitable about requiring Plaintiffs to make a standard monthly payment before considering them for a modification.  And second, because the relationship between Plaintiffs and Defendants was already governed by a valid contract, Plaintiffs may not recover for unjust enrichment.

"Unjust enrichment has three elements:  (1) [t]here must be a benefit conferred on one party by another; (2) the party receiving the benefit must have an appreciation or knowledge of the benefit; and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value."  *Pierce County v. State*, 144 Wash. App. 783, 830 (2008).  However, "[e]nrichment alone will not suffice to invoke the remedial powers of a court of equity.  It is critical that the enrichment be unjust both under the circumstances and as between the two parties to the transaction."  *Farwest Steel Corp. v. Mainline Metal Works, Inc*., 48 Wash. App. 719, 732 (1987).

Plaintiffs again rely on the erroneous premise that they applied for and received a HAMP modification to support this claim, alleging that under HAMP a servicer cannot require a borrower to "make an initial contribution payment pending the processing of the trial period plan before the plan starts." Complaint, ¶ 43.  Because Defendants collected a monthly payment prior to the loan modification, Plaintiffs allege, Defendants were unjustly enriched.  As discussed in Section I.B, however, it is clear that Plaintiffs did not receive a HAMP modification.  As a result, there was no restriction on Defendants requesting a

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 18
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1   monthly payment prior to considering Plaintiffs for a modification.  Even if this Court is

2   compelled, for present purposes, to accept Plaintiffs' dubious assertion that they applied for

3   and received a HAMP modification, though, Plaintiffs could not rely on HAMP's restrictions

4   on up-front fees to support their unjust enrichment claim.  This would destroy the principle

5   that a third party cannot sue on a contract to which he or she is merely an incidental

6   beneficiary by bootstrapping liability under the contract into another theory.[8]  *See Berryman*

7   *v. Merit Property Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1553, 62 Cal. Rptr. 3d 177, 185 (Cal.

8   App. 2007).

9        In the absence of any HAMP restrictions, there is nothing unjust about the collection

10  of a scheduled monthly payment from Plaintiffs prior to considering them for a loan

11  modification.  Plaintiffs were required to make regular monthly payments under the terms of

12  their mortgage loan.  Even assuming Plaintiffs could confer a "benefit" by simply fulfilling

13  their contractual obligations, there is not and cannot be anything unjust about Defendants

14  seeking to ensure that Plaintiffs were in fact serious about complying with those obligations

15  before considering them for a loan modification.  *See Lynch v. Deaconess Med. Ctr.*, 113

16  Wash. 2d 162, 165 (1989) (holding that it was not unjust for a defendant to collect money that

17  was owed to him for medical services rendered and that had been declared uncollectible).  To

18  the extent that Defendants conditioned the loan modification on Plaintiffs making one

19  scheduled monthly payment, there is no unjust enrichment.

20       Moreover, because Plaintiffs' relationship with their loan servicer – BAC – was

21  already governed by Plaintiffs' home mortgage contract, they have no cause of action for

---

22  [8]      Plaintiffs' vague claim that Defendants violated "law" by collecting "an upfront fee" from Plaintiffs,

23  Complaint, ¶ 112, misconstrues the nature of HAMP.  HAMP is not a law, but is rather a federal government program setting out certain guidelines.  *See* Complaint, Exh. 2 at 1 (HAMP Supplemental Directive 09-01).  For

24  the guidelines to have any applicability, a loan servicer must enter into a contract with the Treasury Department (or service a loan for a government-sponsored enterprise such as Fannie Mae or Freddie Mac).  *Id.*  Thus, while a

25  servicer may in some cases have a contractual obligation to the Treasury, HAMP itself does not carry the force of law, and aside from the fact that Plaintiffs did not receive a HAMP modification, their vague claim that

26  Defendants violated "law" has no merit.

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 19
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

1  unjust enrichment.   Unjust enrichment is based on the theory of quasi contract, which

2  "arise[s] from an implied legal duty or obligation" and not a contract agreement.  *Trane, Co.*

3  *v. Randolph Plumbing and Heating*, 44 Wash. App. 438, 441 (1986).  "Under Washington

4  law, a plaintiff who is a party to a 'valid express contract is bound by the provisions of that

5  contract' and may not bring a claim for unjust enrichment for issues arising under the

6  contract's subject matter."  *Minnick v. Clearwire US, LLC*, No. C09-0912, 2010 WL 431879,

7  *5 (W.D. Wash. Feb. 5, 2010) (quoting *Chandler v. Wash. Toll Bridge Auth.*, 17 Wash. 2d

8  591, 604 (1943)).  The terms of Plaintiffs' mortgage loan are spelled out in their mortgage

9  loan contract.  As such, they cannot state an unjust enrichment claim as a matter of law.

10  **VI.   *Plaintiffs' Consumer Protection Act Claims Must Also Be Dismissed.***

11  Finally, Plaintiffs allege a violation of the Washington Consumer Protection Act,

12  RCW 19.86.010, *et seq.* ("CPA").  Complaint, ¶¶ 105-09.  In order to prevail in a private suit

13  under the CPA, a plaintiff must show all five of the following elements: "(1) an unfair or

14  deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest; (4) injury

15  to the plaintiff in his or her business or property, and (5) a causal link between the unfair or

16  deceptive act and the injury suffered."  *Indoor Billboard/Washington, Inc., v. Integra Telecom*

17  *of Washington, Inc.*, 162 Wash. 2d 59, 74 (2007) (citing *Hangman Ridge Training Stables,*

18  *Inc. v. Safeco Title Ins. Co.,* 105 Wash. 2d 778, 784-85 (1986)).  As already discussed in

19  detail, Plaintiffs' claim that anything that Defendants did with respect to their loan

20  modification was unjust, or in any way unfair or deceptive, is meritless and the CPA claim

21  must fail on these grounds alone.  Nor have Plaintiffs suffered any injury: they are still living

22  in their house, have not been foreclosed upon, and have only been making mortgage payments

23  of $781.79 a month, far less than the previous $1460 per month they were required to pay.

24  Plaintiffs are equally unable to establish another key element of this claim.  An

25  indispensable element of a cause of action under the CPA is a showing "not only that a

26  defendant's practices affect the private plaintiff but that they also have the potential to affect

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 20
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

the public interest." *Id.* (citations omitted).  The public interest element can be met in two ways: (1) a *per se* violation, or (2) a failure to satisfy the factors of one of two tests spelled out in *Hangman Ridge*.  *Id.*  Plaintiffs are unable to establish this element under either of these means.

A *per se* violation "requires a showing that a statute has been violated which contains a specific legislative declaration of public interest impact." *Hangman Ridge*, 105 Wash. 2d at 791.  Plaintiffs cannot satisfy this standard in the case at hand, as the Complaint identifies no statute that Defendants violated (and with good reason, as Defendants have not violated any statute or law).  Plaintiffs state only claims for common law breach of contract and promissory estoppel, and do not allege the violation of *any* statutes, let alone statutes that contain a "specific legislative declaration of public interest impact."

Nor can Plaintiffs show a public interest under the second method.  *Hangman Ridge* describes both a consumer transaction test and a private dispute test that can be used to determine whether an act affects the public interest; where the transaction is a private dispute, such as a contract dispute, the private dispute test is utilized.[9]  *Id.* at 789-91 ("[O]rdinarily a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest").  Plaintiffs themselves characterize this case as a breach of contract dispute in the Complaint, *see* Complaint, ¶ 92, and therefore the Court must analyze the following factors: "(1) were the alleged acts committed in the course of defendant's business? (2) did defendant advertise to the public in general? (3) did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) did

---

[9]       The consumer transaction test is inapplicable; as described by the Court in *Hangman Ridge*, this test is typically only applicable in purchase transactions, as where one party purchases a defective product from another party. *Hangman Ridge*, 105 Wash. 2d at 790 (giving examples of purchase of defective wheat seed, a defective mobile home, an automobile with a defective paint job, and a defective used automobile).  Because the transaction at issue in the present case is allegedly a breach of a loan modification agreement and does not involve the purchase of a defective product, the consumer transaction test is not applicable.

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 21
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1  plaintiff and defendant occupy unequal bargaining positions?"  *Hangman Ridge*, 105 Wash.

2  2d at 790-91.

3       This case closely approximates the situation in *Hangman Ridge* itself.  There, the

4  Court applied these factors to a situation involving an escrow closing agent and a client and

5  concluded that although the alleged acts were committed in the course of defendant's

6  business, the second and third factors were not met because the closing agent did not advertise

7  loan closings on a "widespread" basis, and the defendant did not actively solicit the plaintiffs.

8  *Id.*  Similarly, in the case at hand, although the alleged acts were committed in the course of

9  Defendants' business (or at least in the course of BAC's business), the servicing of mortgage

10  loans, factors (2) and (3) lean heavily toward the conclusion that this is a private dispute not

11  governed by the CPA.  As in *Hangman Ridge,* Defendants did not actively solicit the

12  Plaintiffs for the loan modification; in fact, Plaintiffs admit that they contacted Defendants on

13  their own "to inform them of their difficulty [with their mortgage payments] and to inquire as

14  to a possible workout arrangement."  Complaint, ¶¶ 52, 55.  And, even if Plaintiffs and

15  Defendants occupy unequal bargaining position, Plaintiffs were under no obligation to solicit

16  or to sign any loan modification offered.  Accordingly, Plaintiffs are unable to show that this

17  dispute affects the public interest and cannot, therefore, state a CPA claim.  This claim – like

18  Plaintiffs' other baseless claims – must be dismissed.

19  **CONCLUSION**

20       For the foregoing reasons, Defendants respectfully request that the Court dismiss the

21  Complaint of Plaintiffs Kamie and Daniel Kahlo with prejudice for failure to state a claim

22  upon which relief can be granted, and grant such other relief as it deems just and equitable.

23       DATED:  May 13, 2010

24

25

26

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 22
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LANE POWELL PC


By s/John S. Devlin
    John S. Devlin III, WSBA No. 23988
    Andrew Yates, WSBA # 34239
    1420 Fifth Avenue, Suite 4100
    Seattle, WA  98101-2338
    Telephone: (206) 223-6280
    Fax:  (206) 223-7101
    E-mail:  devlinj@lanepowell.com
    E-mail:  yatesa@lanepowell.com

Of Counsel:

GOODWIN PROCTER LLP

James W. McGarry (*pro hac vice pending*)
Mark Tyler Knights (*pro hac vice pending*)
53 State Street
Boston, Massachusetts  02109
Tel.: 617.570.1000
Fax:  617.523.1231
E-mail:  jmcgarry@goodwinprocter.com
Email:  mknights@goodwinprocter.com

Attorneys for Defendants
BANK OF AMERICA, N.A. and
BAC HOME LOANS SERVICING, L.P.

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 23
CASE NO.  2:10-cv-00488 JLR

116589.0178/1845425.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under the laws of the State of Washington, that on the 13th day of May, 2010, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system.  In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following person(s):

Ari Y. Brown
Email: ari@hbsslaw.com

Steve W. Berman
Email: steve@hbsslaw.com

Executed on 13th day of May, 2010, at Seattle, Washington.

s/ Leah S. Burrus
Leah S. Burrus

DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM. - 24
CASE NO.  2:10-cv-00488 JLR
116589.0178/1845425.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107