1

HON. JAMES L. ROBART

2

3

4

5

6

7        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
8                  AT SEATTLE

9    KAMIE KAHLO and DANIEL KAHLO, on )
     behalf of themselves and all others similarly )
10   situated,                                    )    NO.  2:10-cv-00488 JLR
                                                  )
11                              Plaintiffs,       )    **DEFENDANTS' REPLY IN**
                                                  )    **SUPPORT OF MOTION TO**
12   v.                                           )    **DISMISS**
                                                  )
13   BANK OF AMERICA, N.A. and BAC                )    **NOTE ON MOTION CALENDAR:**
     HOME LOANS SERVICING, L.P.                   )    **FRIDAY, JUNE 25, 2010**
14                                                )
                                Defendants.       )    **ORAL ARGUMENT REQUESTED**
15                                                )
                                                  )
16

17        In the last six months at least five Federal District Courts within the 9th Circuit have

18   dismissed lawsuits based on the identical legal theory Plaintiffs advance here – that defaulting

19   borrowers are entitled to recover under a Servicer Participation Agreement ("SPA") between

20   the U.S. Treasury and a loan servicer.  In opposition to Defendants' Motion to Dismiss,

21   Plaintiffs ignore the majority of these cases, pay short shrift to the express terms of the SPA,

22   and fail to overcome the well-established and strong presumption that borrowers are not the

23   intended beneficiaries of SPAs and cannot bring third-party suits for the purported breach of

24   their terms.  As the other federal courts addressing this issue explain, far from expressing an

25   intention to benefit borrowers such as Plaintiffs, the SPA disavows any such intention and

26   provides that it is intended to bind the contracting parties only.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 1
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

1    Plaintiffs also devote substantial time attempting to establish their entitlement to

2    recovery under the Terms and Conditions Agreement ("TCA") Plaintiffs signed in order to

3    modify their loan.  This effort must likewise fail, as Plaintiffs have not demonstrated how

4    Defendants breached the TCA.  Indeed, by its terms, Defendants have fully complied with the

5    TCA.  Similarly, Plaintiffs have failed to present any convincing explanation of how they

6    suffered any harm as a result of Defendants' alleged actions – nor can they.  The simple fact is

7    that Plaintiffs are still living in their homes and their current monthly payments are nearly *half*

8    the amount that Plaintiffs were otherwise obligated to make under the terms of their loan

9    agreement.  This alone must doom Plaintiffs' claims, all of which require a showing of harm

10   before Plaintiffs may recover.

11   **I.      *Borrowers Are Not Intended Beneficiaries of the Servicer Participation Agreement.***

12   In bringing suit purporting to be third-party beneficiaries of the SPA that Bank of

13   America, N.A. entered into with the U.S. Treasury, Plaintiffs attempt to accomplish via a

14   breach-of-contract claim that which multiple courts have concluded cannot be done: enforce

15   the provisions of HAMP, the Emergency Economic Stabilization Act ("EESA"), and the

16   Troubled Assets Relief Program ("TARP") by private suit.[1]  In other words, Plaintiffs contend

17   that although neither Congress nor the Treasury saw fit to create a private right of action by

18   which borrowers could enforce the EESA, TARP, or HAMP, the provisions of HAMP can

19   nonetheless be enforced against servicers by virtue of the SPAs they entered into.  This

20   position is untenable, and conflicts with both case law and the terms of the SPA itself.

21

22

23

---

24   [1]      *See, e.g.*, *Aleem v. Bank of America*, No. EDCV 09-01812-VAP, 2010 WL 532330, *4 (C.D. Cal. Feb.
9, 2010) ("There is no express or implied right to sue fund recipients . . . under TARP or HAMP."); *Gonzales v.*

25   *First Franklin Loan Servs.*, No. 1:09-CV-00941, 2010 WL 144862, *18 (E.D. Cal. Jan. 11, 2010) (no private
right of action under either EESA or TARP); *Mangosing v. Wells Fargo Bank, N.A.*, No. CV-09-0601, 2009 WL

26   1456783 (D. Ariz. May 22, 2009) (no private right of action under EESA).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 2
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1

**A.      Multiple Courts Have Rejected Plaintiffs' Position.**

2

      At the time Defendants filed their motion to dismiss, two district courts in this Circuit

3

had already rejected the proposition that borrowers were entitled to bring suit for the breach of

4

SPAs as the intended beneficiaries of those agreements.  *See Villa v. Wells Fargo Bank, N.A.*,

5

No. 10-cv-81, 2010 WL 935680, *2-3 (S.D. Cal. March 15, 2010); *Escobedo v. Countrywide*

6

*Home Loans, Inc.*, No. 09-cv-1557, 2009 WL 4981618, *1-2 (S.D. Cal. Dec. 15, 2009).  Since

7

that time, several other courts have reached the same conclusion, and none have reached a

8

contrary conclusion.  *See Burtzos v. Countrywide Home Loans*, No. 09-CV-2027W, 2010 WL

9

2196068, *2 (S.D. Cal. June 1, 2010) ("[B]orrowers such as the Plaintiffs are incidental, and

10

not intended, beneficiaries and, therefore, lack standing to sue for an alleged breach of the

11

Servicer [Participation] Agreement."); *Benito v. IndyMac Mortgage Servs.*, No. 2:09-CV-

12

001218, 2010 WL 2130648, *7-8 (D. Nev. May 21, 2010) (borrowers are not intended

13

beneficiaries under Servicer Participation Agreement with standing to sue); *Lucero v.*

14

*Countrywide Bank N.A.*, No. 09cv1742, 2010 WL 1880649, *3-4 (S.D. Cal. May 10, 2010)

15

(same).  Plaintiffs do not even cite these cases, much less distinguish them.[2]

16

**B.      The SPA's Terms Are Inconsistent with an Intent to Benefit Borrowers.**

17

      That multiple courts have rejected Plaintiffs' position is unsurprising.  As the Ninth

18

Circuit explained in *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237 (9th Cir. 2009):

19

20

21

22

23

24

25

26

---

[2]      Instead of citing these cases – which actually address the identical issue before this Court – Plaintiffs rely upon a handful of unpublished state-court decisions to support the proposition that "borrowers have rights that proceed from the contract that [Bank of America] signed."  Response at 14.  None of the cases cited by Plaintiffs and attached to their response even address whether borrowers are intended third-party beneficiaries of HAMP SPAs.  In all such cases, moreover, the servicer's alleged noncompliance with HAMP was raised as a *defense* to a foreclosure claim rather than as the basis for a cause of action; indeed, the very fact that the borrowers were not seeking to assert a claim under HAMP figured into the court's conclusion in at least one case. *See Deutsche Bank Nat'l Trust Co. v. Haas*, No. 2009-2627-AV, at 9-10 (Mich. Cir. Ct., Macomb County, Sept. 30, 2009) (Appx. B to Pls.' Response, pp. 37-38).  That courts might be willing to entertain HAMP allegations in the context of foreclosure proceedings is unsurprising in light of the fact that foreclosures are equitable in nature. *See, e.g.*, *GMAC Mortgage, LLC v. Riley*, No. 500-09 Fc, at 5 (Vermont Super. Ct., Franklin County, Mar. 5, 2010) (Appx. B to Pls.' Response, p. 66).  Even assuming noncompliance with HAMP is be a viable defense *at equity*, it by no means follows that this must give rise to an action *at law*, as Plaintiffs argue here, and none of the cases cited by Plaintiffs suggest as much.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 3
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1
2
3
4
5
6
7

> Demonstrating third-party beneficiary status in the context of a government contract is a comparatively difficult task.  We have explained that parties that benefit from a government contract are generally assumed to be incidental beneficiaries, rather than intended ones, and so may not enforce the contract absent a clear intent to the contrary.  *This "clear intent" hurdle is not satisfied by a contract's recitation of interested constituencies, vague, horatory pronouncements, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind.*  Rather, we examine the precise language of the contract for a "clear intent" to rebut the presumption that the third parties are merely incidental beneficiaries.

8

*Id.* at 1244.  (emphasis added)  Plaintiffs are incapable of making the showing necessary to

9

get over the "clear intent hurdle" and to rebut the strong presumption that they are merely

10

incidental beneficiaries of the SPA.   Rather than evincing a clear intent to rebut the

11

presumption, the SPA, in fact, evinces a clear intent to do just the contrary, and to limit its

12

enforcement to the parties who signed it.

13

In determining whether Bank of America and the Treasury intended the SPA to benefit

14

borrowers, this Court need go no further than § 11E of the SPA, which provides that the SPA

15

"shall inure to the benefit of and be binding upon the parties to the Agreement and their

16

permitted successors-in-interest."   Complaint, Exh. 1 at 10.   Though Plaintiffs seek to

17

downplay the significance of this provision, *see* Response at 13, it effectively sounds the

18

death knell for their third-party beneficiary claims.

19

In *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1212 (9th Cir.

20

1999), the Ninth Circuit rejected an intended beneficiary argument based on very similar

21

contract  language:  "This contract binds and inures to the benefit of the parties hereto, their

22

successors and assigns, including without limitation any water users' organization or similar

23

group which may succeed either by assignment or by operation of law to the rights of the

24

United States hereunder."   The court concluded that "[t]his language clearly evinces the intent

25

of the parties to limit intended beneficiaries to the contracting parties."  *Id.*   While the court

26

conceded that the contract "operate[d] to the [third parties'] benefit . . . and was undoubtedly

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 4
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

1    entered into with [them] in mind," it nonetheless determined, on the basis of the above-quoted

2    language, that the parties to the contract did not intend to extend its benefit to those third

3    parties. *Id.*; *see also Commercial Ins. Co. of Newark v. Pacific-Peru Constr. Corp.*, 558 F.2d

4    948, 953-54 (9th Cir. 1977) (where contract provided that "this instrument shall inure to the

5    benefit of any such reinsurer," reinsurer was intended beneficiary of contract); *Choi v. Chase*

6    *Manhattan Mortg. Co.*, 63 F. Supp. 2d 874, 881-82 (N.D. Ill. 1999) (provision that contract

7    would "be binding upon and inure to the benefit or the parties to this [agreement] and their

8    respective successors and permitted assigns" evidences that plaintiffs not intended

9    beneficiaries); *John Street Leasehold v. FDIC*, No. 95 Civ. 10174 JGK, 1996 WL 737196,

10   *10 (S.D.N.Y. Dec. 2, 1996) (similar).

11          In including substantially similar language in the SPA, Bank of America and the

12   Treasury likewise evinced their intent to limit the intended beneficiaries of the SPA to the

13   contracting parties. As in *Klamath*, that the SPA may operate to the benefit of borrowers, and

14   may even have been entered into with them in mind, cannot overcome the parties'

15   straightforward expression of their intent to limit the benefit of the SPA.[3]

16          That the SPA was not intended to benefit third parties such as Plaintiffs is equally

17   evident from other of its provisions. As Defendants noted in their Motion, § 7 of the SPA

18   contemplates that disputes as to the performance of the SPA may arise, but requires the

19   parties to exhaust "all reasonable steps to resolve disputes internally before commencing legal

20   proceedings." Complaint, Exh. 1, at 7. Plaintiffs do not address this section in their

21   Response. However, it provides strong evidence that Bank of America and the Treasury did

22   not anticipate that third parties could sue to enforce the SPA. Were third-party suits

23   permitted, it would lead to the anomalous and absurd result that the actual parties to the

24   ───────────────────

     [3]    Although Plaintiffs attempt to recast Defendants' argument as contending that intended-beneficiary
25   status is contingent upon a contract's inclusion of a third-party "right to sue" provision, *see* Response at 13,
     Defendants argue only that § 11E of the SPA expressly disavows any intention to benefit parties other than the
26   contracting parties.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 5
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1    agreement would be required to attempt to resolve disputes amicably out of court before filing

2    suit, whereas third parties would face no such obstacle.

3          In the face of these provisions, which are flatly inconsistent with an intention to

4    benefit third parties, Plaintiffs instead point to select sections of the SPA that they claim show

5    that the SPA was entered into with borrowers in mind.   As already noted, though, in

6    attempting to rebut the presumption that government contracts were not intended to benefit

7    third parties, it is not sufficient to merely show "that the contract operates to the third parties'

8    benefit and was entered into with them in mind." *Santa Clara*, 588 F.3d at 1244.  *None* of the

9    SPA provisions that Plaintiffs identify sets forth any "unambiguous, concrete" terms that

10   govern how a loan servicer must service or modify loans under HAMP.  *Cf. id.* at 1246.

11   Instead, most simply refer to the "program documentation," and one in fact makes clear that

12   although Bank of America must maintain records regarding borrower payments, these records

13   are for the benefit of the Treasury, not borrowers.  *See* Complaint, Exh. 1, at 3-4, § 4E.

14         Only the program documentation directs servicers to take certain actions with respect

15   to loans, and even then the servicer is obligated only to *consider* borrowers for a HAMP

16   modification.  Complaint, Exh. 2 at 1.  When evaluating borrowers for modifications under

17   HAMP, the servicer retains considerable discretion.  *See, e.g.*, *id.* at 5, 17.  It is partially on

18   this basis that multiple courts have concluded that borrowers have no right to sue as intended

19   beneficiaries of SPAs.  *See, e.g.*, *Burtzos*, 2010 WL 2196068, at *2 ("[Q]ualified borrowers . .

20   . cannot reasonably rely on a manifested intention to confer a right upon them because the

21   Servicer [Participation] agreement does not *require* [the servicer] to modify loans."); *Benito*,

22   2010 WL 2130648, at *7 (noting that "even Fannie Mae, which has rights under the contract,

23   cannot force [a servicer] to make any particular loan modification" and concluding that "a

24   borrower could not require [the servicer] to make any particular loan modification under the

25   HAMP contract either").  This court should do the same.

26

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 6
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

1

2

**C.**      <u>**The Circumstances Surrounding the SPA Indicate that Borrowers Are Not Intended Beneficiaries.**</u>

3

4

5

6

7

8

9

10

11

12

13

14

15

In addition to the language of the SPA itself, the governing statute and the circumstances surrounding the creation of the SPA necessarily lead to the conclusion that borrowers are not intended beneficiaries of the SPA. As the court in *Williams v. Geithner*, No. 09-1959 ADM/JJG, 2009 WL 3757380, *6 (D. Minn. Nov. 9, 2009), recognized, in enacting the EESA and TARP, "Congress did not intend to mandate loan modifications." Rather, "Congress dictated that requests for loan modifications necessarily consider the [Net Present Value] to the taxpayer." *Id.* As a result, the EESA and TARP did not create an entitlement to mortgage loan modifications for borrowers, but instead linked modifications "to decisions that result in profits to taxpayers." *Id.* This is borne out in the "considerable discretion" afforded servicers in complying with HAMP's mandate's. *Id.* at *6; *see also id.* at *7 ("While Congress required the Secretary to implement a plan to assist distressed homeowners, that plan not only made servicer participation voluntary, but also afforded to program participants discretion on several variables that impact the NPV determination.").

16

17

18

19

20

21

22

23

24

25

26

Moreover, the sheer number of borrowers who could bring suit against the Treasury, Bank of America, or other servicers were SPAs enforceable by borrowers lends further support to the conclusion that the SPA was not intended to inure to the benefit of borrowers like Plaintiffs. *See Santa Clara*, 588 F.3d at 1248 ("The breadth and indefiniteness of a class of beneficiaries is entitled to some weight in negating the inference of intended beneficiary status."). As the court in *Villa*, 2010 WL 935680, at *3 n.1, noted, "the HAMP legislation was enacted with the hopes of helping 3 to 4 million homeowners avoid foreclosure." *See also* Complaint, Exh. 2 at 1 (HAMP Supplemental Directive 09-01). To date, the Treasury has entered into nearly identical SPAs with over 100 mortgage loan servicers, including some of the largest servicers in the country. *See* Contracts – Making Home Affordable Program, *at* http://www.financialstability.gov/impact/contracts_list.htm (last visited June 21, 2010). Of

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 7
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1   these residential loan servicers, Bank of America is the nation's largest, servicing over $2

2   trillion worth of mortgage loans as of the end of last year. *See* Chart, *Residential Servicers at*

3   *12/31/09*, NAT'L MORTGAGE NEWS, Feb. 22. 2010, at 1.  Indeed, Plaintiffs themselves assert

4   that Bank of America has over 1,000,000 HAMP-eligible loans in its servicing portfolio.

5   Complaint, ¶ 49.  If Plaintiffs' theory were accepted, the number of borrowers who would be

6   intended beneficiaries with standing to sue under these SPAs would number in the millions –

7   encompassing every borrower who has a loan serviced by one of the more than 100 entities

8   with SPAs.  This is far from a "narrow, well-defined class," *Santa Clara*, 588 F.3d at 1248,

9   and Plaintiffs cannot have standing to sue under the SPA.[4]

10  **II.   *Plaintiffs Are Not Entitled to Recover for the Breach of the Terms and Conditions Agreement.***

11          Plaintiffs' breach of contract and other claims must similarly fail to the extent that

12  they are premised upon the TCA Plaintiffs signed on August 30, 2009.  As set forth in

13  Defendants' motion, no contract was formed, and even if a contract was formed, there was no

14  breach of any terms of that contract based upon the complaint, which alleges that Defendants

15  breached the TCA by "failing to offer Plaintiffs permanent HAMP modifications, and by

16  collecting upfront fees."  Complaint, ¶ 92.  As Defendants pointed out, *no term of the TCA*

17  imposes any such duties.  Confronted with this fact, Plaintiffs now reverse course and claim

18  that their breach of contract claim, to the extent that it is premised upon the TCA, relies upon

19  other conduct, none of which constitutes a material breach of any term of the TCA.

20          Furthermore, in their Motion, Defendants explained the Complaint failed to allege any

21  economic loss as a result of Defendants' alleged actions – an indispensable element of

22

23  ――――――――――――――
    [4]   In addition, given the enormous number of borrowers covered by any given SPA, a servicer's voluntary
24  participation in HAMP – which is strongly encouraged by the Treasury – would be severely discouraged if the
    servicer were exposed to multiple private causes of action and damages for failing to comply with HAMP
25  requirements. *Cf. Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 299 (2d Cir. 1998) (rejecting
    Plaintiffs' theory that they were third-party beneficiaries of contracts between landlords and housing authority in
26  party because this "might severely discourage landlord participation in the Section 8 program by creating an
    open-ended liability for landlord-participants").

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 8
CASE NO.  2:10-cv-00488 JLR
116589.0178/1861480v1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1    Plaintiffs' breach of contract claim.  *See* Motion at 14-15.  Plaintiffs' response asserts that

2    Defendants' "claim that Plaintiffs suffered no damages because they have not been foreclosed

3    on and because they are free to declare bankruptcy shows a marked lack of understanding of

4    the plight of homeowners facing default and foreclosure."  Response at 21.  Yet these are

5    precisely the types of harm that Plaintiffs claim to have suffered in their Complaint, and by

6    referencing them Defendants were doing no more than responding to the Plaintiffs'

7    allegations.  *See, e.g.*, Complaint at ¶ 68 (alleging that Plaintiffs have no "assurances that their

8    home will not be foreclosed"); *id.* at ¶ 95 (alleging that Plaintiffs have suffered harm by

9    "forego[ing] other remedies that might be pursued to save their homes *[sic]*, such as

10   restructuring their debt under the bankruptcy code, or pursuing other strategies to deal with

11   their default, such as selling their home").

12            As Defendants argued in their motion, Plaintiffs have not alleged any facts that would

13   plausibly establish that Plaintiffs have suffered any economic harm as a result of Defendants'

14   conduct.   Plaintiffs have not alleged, nor can they, that Defendants rejected one of their

15   reduced payments, thereby causing them to default.  Plaintiffs have not and cannot allege that

16   Defendants foreclosed upon them.  And, Plaintiffs' conclusory allegations to the contrary,

17   Defendants have done nothing to prevent Plaintiffs from declaring bankruptcy or selling their

18   home.   Rather, the Complaint makes clear that Defendants have permitted Plaintiffs, and

19   continue to permit Plaintiffs, to remain in their home and to make loan payments in an amount

20   far less than they were contractually obligated to make.[5]

21            Because Plaintiffs have not articulated what damages they have suffered as a result of

22   Defendants' alleged conduct, the Complaint must be dismissed.

23

24   [5]       For this reason, Plaintiffs' assertion that they "have been damaged by paying their dwindling funds to
     [Defendants] based on a promise that their loan was modified," Response at 21, warrants little consideration.  In
25   essence, Plaintiffs are contending that were it not for Defendants' agreement to accept lower mortgage loan
     payments, they would have stopped making payments on the loan entirely – thereby breaching their mortgage
26   agreement and entitling the holder of their mortgage to foreclose upon them.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 9
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

***III.   Plaintiffs May Not Recover for Breach of the Covenant of Good Faith and Fair Dealing.***

Plaintiffs' entire argument in defense of their claim for breach of the implied covenant of good faith and fair dealing is limited to a pair of sentences tacked on to the end of their argument as to why they are entitled to recover under the SPA. *See* Response at 18. Plaintiffs therefore appear to have abandoned any reliance upon the TCA in connection with this claim. To the extent that this claim is premised upon the SPA, Plaintiffs' cursory argument does not establish entitlement to relief under this theory. That Plaintiffs claim to have alleged "that [Bank of America's] performance of its obligations under the SPA have [*sic*] been designed to frustrate homeowners like the Kahlos" is insufficient to state a claim for relief under this theory, as this is little more than the type of "formulaic recitation of the elements of a cause of action," unsupported by facts, that the Supreme Court decried in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). This claim must be dismissed.

***IV.   Plaintiffs' Consumer Protection Act Claims Must Also Be Dismissed.***

In an effort to salvage their claims under the Washington Consumer Protection Act, RCW 19.86.010, *et seq.* ("CPA"), Plaintiffs now claim – for the first time – that they did not receive certain disclosures required by RCW 31.04.102 and 19.146.030. Response at 22. It should go without saying that Plaintiffs cannot shift theories of recovery in their response to a motion to dismiss. *See Provencio v. Vazquez*, 258 F.R.D. 626, 639 (E.D. Cal. 2009); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1090 (N.D. Cal. 2006) (refusing to consider theory raised for the first time in plaintiffs' opposition to motion to dismiss). Even if this court considers this newly-added theory, it is unsupported by Plaintiffs' citation to paragraph 59 of the Complaint, which contain absolutely no allegations to the effect that Plaintiffs did not receive any requisite disclosures. And, moreover, Plaintiffs' bald assertion that they "were required to accept [the modification offer] immediately," Response at 22, does not hold up under scrutiny: Plaintiffs did not have to sign the TCA, did not have to pay lower

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 10
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1  monthly mortgage payments, and could have simply continued making the payments due

2  under their previous plan.

3      Plaintiffs offer only token resistance to Defendants' argument that they have not met

4  the public interest element of a cause of action under the CPA, arguing that that prong is met

5  by their allegations that other homeowners have been similarly affected.  *Id.* at 23.  Plaintiffs'

6  reliance on their class allegations cannot substitute for an analysis of the factors of the

7  "private dispute" test set forth in *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*

8  *Co.,* 105 Wash. 2d 778, 790-91 (1986).  It is not sufficient for Plaintiffs to claim that the

9  public interest element "involves questions of fact not properly taken up on a 12(b)(6)

10  motion."  Response at 23.  As this Court has recognized, a court may dismiss a CPA claim

11  where the plaintiff fails to plead facts sufficient to establish the public interest element.  *See*

12  *Guketlov v. Homekey Mortgage, LLC*, No. C09-1265JLR, 2009 WL 3785575, *3-5 (W.D.

13  Wash. Nov. 9, 2009).  Plaintiffs have failed to do so, and their CPA claim must be dismissed.

### CONCLUSION

15      For the foregoing reasons, and for the reasons set forth in their Motion to Dismiss and

16  Supporting Memorandum, Defendants respectfully request that the Court dismiss the

17  Complaint of Plaintiffs Kamie and Daniel Kahlo with prejudice for failure to state a claim

18  upon which relief can be granted.[6]

---

24  [6]  Plaintiffs' single-sentence request to amend the Complaint if their claims are dismissed, *see* Response at 23, fails to explain what additional facts Plaintiffs would plead that could conceivably entitle them to relief, and

25  therefore must be denied.  *See Northwest Environmental Defense Ctr. v. Brown*, 476 F. Supp. 2d 1188, 1199 (D. Or. 2007) (denying leave to amend where Plaintiff sought leave to amend if motion to dismiss was granted, but

26  did not explain what additional facts could be alleged).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 11
CASE NO.  2:10-cv-00488 JLR
116589.0178/1861480v1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1       DATED:  June 25, 2010

2                                       LANE POWELL PC

3

4                                  By /s/John S. Devlin
                                      John S. Devlin III, WSBA No. 23988

5                                     Andrew Yates, WSBA # 34239
                                      1420 Fifth Avenue, Suite 4100

6                                     Seattle, WA  98101-2338
                                      Telephone: (206) 223-6280

7                                     Fax:  (206) 223-7101
                                      E-mail:  devlinj@lanepowell.com

8                                     E-mail:  yatesa@lanepowell.com

9

10  GOODWIN PROCTER LLP

11  James W. McGarry (*pro hac vice*)
    Mark Tyler Knights (*pro hac vice*)

12  53 State Street
    Boston, Massachusetts  02109
    Tel.:  617.570.1000

13  Fax:  617.523.1231
    E-mail:  jmcgarry@goodwinprocter.com

14  Email:  mknights@goodwinprocter.com

15                                     Attorneys for Defendants
                                       BANK OF AMERICA, N.A. and

16                                     BAC HOME LOANS SERVICING, L.P.

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 12
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1

## CERTIFICATE OF SERVICE

2    Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under

3 the laws of the State of Washington, that on the 25th day of June, 2010, the document attached

4 hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF

5 system.  In accordance with their ECF registration agreement and the Court's rules, the Clerk

6 of the Court will send e-mail notification of such filing to the following person(s):

7

8    Ari Y. Brown
     Email: ari@hbsslaw.com

9    Steve W. Berman
     Email: steve@hbsslaw.com

10

11

12    Executed on this 25th day of June, 2010, at Seattle, Washington.

13
                                            s/  Leah S. Burrus
14                                              Leah S. Burrus

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS - 13
CASE NO.  2:10-cv-00488 JLR

116589.0178/1861480v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107